[No. H030905. Sixth Dist. Dec. 28, 2007.]

JOE HUH, Plaintiff and Appellant, v.
GUANYIN J. WANG et al., Defendants and Respondents.

1408

**COUNSEL**

Damian R. Fernandez for Plaintiff and Appellant.

Lawrence R. Jensen for Defendants and Respondents.

**OPINION**

**McADAMS, J.**—In this civil action, the appellant challenges an order denying his motion to set aside a summary judgment. For reasons explained below, we affirm.

## BACKGROUND

This litigation grew out of a home remodel. Plaintiff and appellant Joe Huh, doing business as Omega Construction, entered into a contract with defendant and respondent Guanyin J. Wang to remodel respondent's residence.

After disputes arose, appellant filed this action in December 2004 for breach of contract and to enforce a mechanic's lien. The complaint names respondent as well as several other individuals.[1] All defendants answered, and respondent Wang cross-complained.

### *Discovery Order (April 2005)*

In February 2005, respondent propounded discovery, including requests for admissions. When appellant failed to respond within the time allowed, respondent moved for an order deeming the matters admitted. That motion was granted in April 2005.

Appellant made two unsuccessful attempts to seek reconsideration of the discovery order: a motion presented in April 2005, which the clerk rejected

---

[1] The other named defendants are Zu-Feng Y. Wang, Daniel Ming Hoh, and Hui Judy Cheng; all allegedly claimed some interest in the property.

for filing, and a motion filed in February 2006, which appellant later took off calendar.

### Summary Judgment (March 2006)

Armed with the deemed admissions, respondent brought a motion for summary judgment in November 2005 regarding both the complaint and the cross-complaint. Hearing on the motion was scheduled for February 2006.

Appellant filed no written opposition. But on the day before the hearing, he applied ex parte for a continuance and for relief from his default in failing to oppose the motion, which he blamed on attorney calendaring error. He renewed that application on the day of the hearing. The court denied the applications.

The motion went forward (with no appearance by appellant), and summary judgment was granted on both the complaint and the cross-complaint, establishing the amounts owed. Respondent was found to be the prevailing party; he was later awarded fees and costs.

Judgment was entered in March 2006. Consistent with the order granting summary judgment, the judgment resolved the complaint, the cross-complaint, and the mechanic's lien. It established the amount due appellant ($56,830), which was far less than he had claimed ($133,253).

Respondent served notice of entry of the judgment in April 2006.

### Attacks on the Judgment

Appellant attempted to overturn the judgment in several different ways.

In early June 2006, he filed a motion for new trial and for relief from judgment. Several days later, he filed a notice of appeal *Huh v. Wang* (July 3, 2006, H030296 [app. dism.]). In supplemental opposition papers, respondent asserted that the appeal divested the trial court of jurisdiction to act on appellant's motion for new trial. In late June 2006, appellant abandoned the appeal. As for the new trial motion, the hearing was continued to July 2006, then taken off calendar.

In late July 2006, appellant brought a motion to set aside the judgment under section 473, subdivision (b), of the Code of Civil Procedure.[2] The court denied the motion in September 2006.

---

[2] We refer to that provision hereafter as section 473(b). Further unspecified statutory references are to the Code of Civil Procedure.

This appeal from the September 2006 order ensued.

## CONTENTIONS

Appellant contends that the trial court was required to grant him relief under section 473(b). Because his failure to oppose summary judgment was the result of attorney error, he asserts, the mandatory relief provisions of the statute apply. Alternatively, appellant argues, even under the discretionary provisions of the statute, the court abused its discretion in denying relief.

Respondent disputes both contentions on the merits. In addition, respondent characterizes the postjudgment motion at issue here as a defective attempt at reconsideration and he asks us to dismiss this appeal as an impermissible bid for review of its denial. We consider that issue at the threshold.

## APPEALABILITY

We first address the threshold question of whether the challenged order is appealable, "since the question of appealability goes to our jurisdiction . . . ." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720]; accord, *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074].)

Appealability depends on the nature of the motion and order below. If this appeal is in fact taken from the denial of a motion for reconsideration, as respondent contends, there is a split of authority concerning appealability. (See *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1458 [30 Cal.Rptr.3d 914]; *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 81 [84 Cal.Rptr.2d 739].) But if the appeal is from the denial of a motion for relief under section 473, as it purports to be, the order is appealable. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 611 [107 Cal.Rptr.2d 489]; accord, *SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516, fn. 3 [39 Cal.Rptr.3d 55].)

According to respondent, the postjudgment motion "should be treated on appeal as a motion for reconsideration or renewal of a previously denied application, within the meaning of CCP § 1008." In effect, respondent is asking us to look beyond the motion's label, both as given by appellant and as treated by the trial court. We decline to do so. (See *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1608–1609 [275 Cal.Rptr. 887].) We therefore accept the challenged order at face value, as the denial of a motion under

section 473. As such, it is appealable. (*Leader v. Health Industries of America, Inc., supra*, 89 Cal.App.4th at p. 611.)

## DISCUSSION

Having concluded that the challenged order is appealable, we turn to the substantive issues. At issue here is the application of section 473(b), which empowers a court to grant relief in appropriate cases from attorney error. The statute contains both mandatory and discretionary provisions.

### I. *Mandatory Relief*

In certain cases of attorney fault, section 473(b) requires the trial court to grant relief. The mandatory relief provision states in pertinent part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473(b).)

#### A. *Requirements*

█ Procedurally, an application for mandatory relief "must be filed within six months of entry of judgment . . . ." (*Vandermoon v. Sanwong* (2006) 142 Cal.App.4th 315, 320 [47 Cal.Rptr.3d 772], citing § 473(b).) In addition, the application must "be in proper form, and be accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect." (*Vandermoon*, at p. 320.) Furthermore, the defaulting party must submit sufficient admissible evidence that the default was actually caused by the attorney's error. (*Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986, 991 [40 Cal.Rptr.2d 727].) "If the prerequisites for the application of the mandatory relief provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief." (*SJP Limited Partnership v. City of Los Angeles, supra*, 136 Cal.App.4th at p. 516.)

#### B. *The Provision's Reach*

█ In providing for mandatory relief, "the Legislature created a narrow exception to the discretionary relief provision for default judgments and dismissals." (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th

249, 257 [121 Cal.Rptr.2d 187, 47 P.3d 1056] (*Zamora*).) By its express terms, the mandatory relief provision applies only to defaults, default judgments, and dismissals. (*Vandermoon v. Sanwong, supra*, 142 Cal.App.4th at p. 320.) But some courts have construed the provision to reach other circumstances deemed to be procedural equivalents. (See, e.g., *In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th 1438, 1443 [96 Cal.Rptr.2d 546].) "The rationale of these cases is that, where there is no hearing on the merits, an attorney's neglect should not prevent the party from having his or her day in court." (*Ibid.*) Other courts have rejected that rationale, characterizing such decisions as "understandable, yet ultimately misguided quests to salvage cases lost by inept attorneys," which "have applied the mandatory provision far beyond the limited confines the Legislature intended." (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 148 [114 Cal.Rptr.2d 93] (*English*).)

As more specifically relevant here, there is a split of authority on whether the mandatory provisions of section 473(b) "can provide relief from an order granting summary judgment." (8 Witkin, Cal. Procedure (2007 supp.) Attack on Judgment, § 196A, p. 230.) At least one case allowed statutory relief in this context, *Avila v. Chua* (1997) 57 Cal.App.4th 860, 868 [67 Cal.Rptr.2d 373]. Other cases have rejected that view, declining to extend the mandatory provisions to the summary judgment context. (See, e.g., *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290, 294 [33 Cal.Rptr.3d 639] [failure to oppose summary judgment motion]; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 681 [68 Cal.Rptr.2d 228] [defective opposition to summary judgment motion].)

According to appellant: "On closer inspection, there is no split of authority." In his view, the cases can be reconciled based on their procedural posture: where the attorney failed to oppose the summary judgment motion at all, "relief is mandatory. Where opposition is filed that does not dispute the merits, relief is not mandatory."

We disagree with appellant's interpretation of the case law. A careful reading of the relevant decisions reflects a more fundamental disagreement about the reach of the mandatory relief provision, a point made clear in the *English* case. (*English, supra*, 94 Cal.App.4th 130.)

*English* is among the cases refusing to extend the statute beyond its explicit terms. (*English, supra*, 94 Cal.App.4th at p. 149.) There, the plaintiff opposed a defense summary judgment motion based solely on a requested continuance to conduct discovery. (*Id.* at pp. 133–134; see § 437c, subd. (h).)

After refusing to continue the hearing, the trial court granted summary judgment. (*English*, at p. 134.) The plaintiff sought relief under the mandatory relief provision of section 473(b), submitting her attorney's declaration of fault for failing to oppose summary judgment on the merits. (*English*, at p. 134.) The trial court denied relief, and the denial was affirmed on appeal. (*Id.* at pp. 134, 133.)

The *English* court thoroughly reviewed both the legislative history of the mandatory relief provision and the case law interpreting it. (*English, supra*, 94 Cal.App.4th at pp. 138–142.) Ultimately, the court concluded, the mandatory relief provision does not apply to summary judgments. (*Id.* at p. 143.) As the court explained, "a summary judgment is neither a 'default,' nor a 'default judgment,' nor a 'dismissal.' " (*Ibid.*) A summary judgment is not a *default* under the mandatory relief provision, because that statutory term refers only "a 'default' entered by the clerk (or the court) when a defendant fails to answer a complaint, not to every 'omission' or 'failure' in the course of an action . . . ." (*Ibid.*, fn. omitted.) A summary judgment likewise is not a *default judgment*, which "is a judgment entered after the defendant has failed to answer the complaint and the defendant's default has been entered." (*Ibid.*) Finally, a summary judgment is not a *dismissal*, which is defined as " 'the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court.' " (*Id.* at p. 144, quoting Justice Epstein's dissent in *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 603 [70 Cal.Rptr.2d 680] (*Yeap*).) A defense summary judgment cannot be considered a dismissal since it "does not constitute a removal of the plaintiff's application for judicial relief, but rather an adjudication . . . based on the undisputed facts before the court." (*English*, at p. 149.)

In explaining its reasons for refusing to extend the mandatory relief provisions to summary judgments, the *English* court not only discussed the relevant statutory language in great detail, it also tethered the statute's key terms to legislative policy. (*English, supra*, 94 Cal.App.4th at pp. 143–149.) The court explained that its narrow construction furthers the legislative goal of achieving "parity between defendants and plaintiffs in their entitlement to relief under the mandatory provision of section 473(b)." (*Id.* at p. 145.) The court decried other courts' "expansive interpretation of the statute under which the dispositive test, largely detached from the language of the statute itself, is whether the ruling from which relief is sought was 'in the nature of a default' and whether the party seeking relief 'had her day in court.' " (*Id.* at pp. 147–148.) The *English* court instead deferred to the express dictates of the mandatory relief provision, saying no "court is at liberty to substitute its judgment for that of the Legislature in determining how far the statute should reach, no matter what good intentions may urge such an action." (*Id.* at

p. 148.) In doing so, it embraced the rationale expressed in Justice Epstein's dissent in *Yeap*. (*Id.* at pp. 144, 145, 148.) Subsequent cases have also endorsed that reasoning. (See, e.g., *Prieto v. Loyola Marymount University, supra*, 132 Cal.App.4th at p. 294; *Vandermoon v. Sanwong, supra*, 142 Cal.App.4th at p. 321.)[3]

■ We agree with the cogent analysis in *English*, which is faithful to legislative intent and consistent with established principles of statutory construction. As the *English* court said: "It is not an appellate court's task, nor, indeed, its prerogative, when interpreting a statute, to extend the scope of the statute to encompass situations 'analogous' to those the statute explicitly addresses. Rather, an appellate court's task is simply to determine what the Legislature meant by the words it used, relying first and foremost on the words themselves." (*English, supra*, 94 Cal.App.4th at p. 144.) Where the statutory language is unambiguous, its plain meaning controls. (*Id.* at p. 143; see *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].) Here, the statutory language is unequivocal. ■ "As expressly worded, section 473(b) applies *only* to relief sought in response to defaults, default judgments or dismissals." (*Vandermoon v. Sanwong, supra*, 142 Cal.App.4th at p. 320, italics added.) Summary judgments are neither defaults, nor default judgments, nor dismissals. (*English*, at p. 133.) The explicit statutory language of section 473(b) thus "provides no basis for extending the mandatory provision" to such judgments. (*Prieto v. Loyola Marymount University, supra*, 132 Cal.App.4th at p. 297.) In the words of Justice Epstein, "to read the mandatory provision of . . . section 473 to apply whenever a party loses his or her day in court due to attorney error goes far beyond anything the Legislature has done." (*Yeap, supra*, 60 Cal.App.4th at p. 605 (dis. opn. of Epstein, J.).)

---

[3] As noted in a recent decision by the same court that decided *Yeap*, "Justice Epstein's reasoning has found favor with courts that have similarly concluded that an overly expansive interpretation of the term 'dismissal' should be avoided." (*Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1071 [36 Cal.Rptr.3d 637], discussing *Yeap, supra*, 60 Cal.App.4th at pp. 603–605 (dis. opn. of Epstein, J.).) But the court found no need to revisit its decision in *Yeap*, given its holding that relief was precluded by counsel's intentional strategy in permitting the default. (*Jerry's Shell v. Equilon Enterprises*, at p. 1073.) Justice Epstein concurred in the judgment, noting his continued disagreement with the view expressed by the majority in *Yeap*, but agreeing that the earlier decision would not aid the appellant in the present case anyway. (*Id.* at p. 1075.)

In an even more recent decision by the court that decided *Yeap*, this one authored by Justice Epstein, the court discussed *English* and its progeny with approval, unanimously concluding that the attorney fault provision of section 473, subdivision (b), "does not apply to an attorney's failure to timely file opposition and a cross-motion to a motion to enforce a settlement." (*Hossain v. Hossain* (2007) 157 Cal.App.4th 454, 456 [39 Cal.Rptr.3d 356].)

## C. *Appellate Review*

"The determination of whether the mandatory provision of section 473(b) applies to summary judgments is a task of statutory construction." (*English, supra*, 94 Cal.App.4th at p. 142.) Statutory interpretation is a question of law, which appellate courts review de novo. (*Kavanaugh v. West Sonoma County Union High School Dist., supra*, 29 Cal.4th at p. 916.) Where an appeal involves factual determinations that affect entitlement to mandatory relief, such as whether attorney fault caused the default, we examine the record for substantial evidence in support of the trial court's exercise of discretion. (*Todd v. Thrifty Corp., supra*, 34 Cal.App.4th at pp. 991–992.) Here, the issue turns on construction of the statute. Our review thus is de novo.

## D. *Analysis*

As thoroughly explained above, we agree with the *English* court's narrow construction of the mandatory portion of section 473(b). (*English, supra*, 94 Cal.App.4th at p. 143.) As *English* and its progeny recognize, the mandatory provision "applies only to relief sought in response to defaults, default judgments or dismissals." (*Vandermoon v. Sanwong, supra*, 142 Cal.App.4th at p. 320.) Summary judgments thus are not within the purview of the mandatory relief provision. (*Ibid.; English*, at p. 143.)

█ Since appellant sought to set aside a summary judgment, his case offers no basis for mandatory statutory relief and the trial court did not err in refusing it. That brings us to appellant's alternative argument that discretionary relief should have been granted.

## II. *Discretionary Relief*

█ "The first portion of . . . section 473, providing that the court 'may' relieve a party from a dismissal, vests the trial court with the discretion to vacate a dismissal based on a party's or attorney's excusable neglect." (*Todd v. Thrifty Corp., supra*, 34 Cal.App.4th at p. 991.) It states in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473(b).)

## A. *The Provision's Reach*

■ In contrast to the mandatory portion of section 473(b), "discretionary relief under the statute is not limited to defaults, default judgments, and dismissals . . . ." (*English, supra*, 94 Cal.App.4th at p. 149.) As the California Supreme Court recently observed: "The discretionary relief provision of section 473, subdivision (b) applies to *any* 'judgment, dismissal, order, or other proceeding.' " (*Zamora, supra*, 28 Cal.4th at p. 254.) Thus, for example, "the failure of counsel to meet a procedural deadline" is "a proper subject for section 473 relief." (*Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1193 [106 Cal.Rptr.2d 726].) So, too, is "failure to timely respond to [a] request for admissions." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 234 [211 Cal.Rptr. 416, 695 P.2d 713] (*Elston*).)

## B. *Requirements*

■ "In order to qualify for [discretionary] relief under section 473, the moving party must act diligently in seeking relief and must submit affidavits or testimony demonstrating a reasonable cause for the default." (*Elston, supra*, 38 Cal.3d at p. 234.) In other words, the court's "discretion may be exercised only after the party seeking relief has shown that there is a proper ground for relief, and that the party has raised that ground in a procedurally proper manner, within any applicable time limits." (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495 [52 Cal.Rptr.3d 862].)

A party seeking discretionary relief on the ground of attorney error must demonstrate that the error was excusable, since the attorney's negligence is imputed to the client. (*Zamora, supra*, 28 Cal.4th at p. 258.) "The inexcusable neglect of an attorney is usually not a proper basis for granting the client's motion under section 473." (*Elston, supra*, 38 Cal.3d at p. 236, fn. 6.) "Excusable neglect is that neglect which might have been the act of a reasonably prudent person under the same circumstances." (*Alderman v. Jacobs* (1954) 128 Cal.App.2d 273, 276 [274 P.2d 930]; see *Zamora*, at p. 258.)

## C. *Appellate Review*

Generally speaking, the trial court's ruling on a discretionary motion for relief is reviewed for an abuse of discretion. (*Zamora, supra*, 28 Cal.4th at p. 257.) But "because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]." (*Elston, supra*, 38 Cal.3d at p. 233; see also *Zamora*, at p. 256.) For that reason, "a trial court order

denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Elston*, at p. 233.)

### D. *Analysis*

In denying appellant's motion here, the trial court implicitly determined that he failed to establish entitlement to relief. The record supports that implicit finding on either of two grounds: unexplained delay or inexcusable neglect.

### 1. *Diligence*

As noted above, a threshold requirement for relief is the moving party's diligence. (*Elston, supra*, 38 Cal.3d at p. 234.) As the statute itself provides, application for relief "shall be made *within a reasonable time*, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473(b), italics added.) "Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted." (*Elston*, at p. 233; see *Zamora, supra*, 28 Cal.4th at p. 258.) But relief is not warranted unless the moving party demonstrates diligence in seeking it. (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 624 [243 Cal.Rptr. 42].) " 'The moving party has a double burden: He must show a satisfactory excuse for his default, and he must show diligence in making the motion after discovery of the default.' " (*Id.* at p. 625, italics omitted.) Whether a party has acted diligently is a factual question for the trial court. (*Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 528 [190 P.2d 593] (*Benjamin*).)

Here, the trial court impliedly determined that appellant did not act diligently in seeking relief—a determination that is amply supported in fact and law.

### a. *Length of the Delay*

As the record in this case demonstrates, the following pertinent events took place (all in 2006): by early February, appellant's counsel was aware of his failure to oppose the summary judgment motion, as demonstrated by his ex parte applications; in March, summary judgment was entered; in April, notice of entry of judgment was given; in early June, appellant filed a motion for new trial and for relief from the judgment, which he took off calendar the following month; also in early June, appellant filed a notice of appeal

challenging the judgment, but he abandoned that appeal on June 30th. Finally, on July 31st, appellant filed the motion for relief at issue here.[4]

Although the parties do not dispute the above chronology, they disagree on the length of the delay preceding appellant's motion for relief. Focusing on the first and last events described above, respondent argues that nearly six months elapsed between counsel's demonstrated awareness of his error in early February and his filing of the motion for relief in late July. Asserting diligence, appellant instead claims a shorter time lag, commencing with the abandonment of his first appeal. As appellant puts it, his "counsel abandoned a prior appeal after learning that the appeal would effectively deprive the trial court of jurisdiction to hear the § 473 motion. As soon as the appeal was abandoned, counsel promptly filed the § 473 motion." Appellant's contention does not withstand scrutiny. In the first place, he offers no explanation for his counsel's ignorance of the effect of an appeal on the trial court's jurisdiction. Furthermore, we would question appellant's claim that he acted "promptly" after abandoning his appeal on June 30th, since he waited a full calendar month thereafter before applying for relief from judgment. In any event, we do not share appellant's view that abandonment of his appeal commenced the period. But neither do we agree with respondent's starting point for calculating the delay.

In our view, the critical triggering event for seeking relief from *the judgment* was notice of its entry, which was given on April 13, 2006. Appellant waited to file his motion until more than three months later, on July 31, 2006.

That time lag puts this case in the same league as *Benjamin, supra*, 31 Cal.2d 523. There, our high court noted, "no action was taken to open the default for a period of more than three months." (*Id.* at p. 528.) As the court observed: "Defendant has not cited, nor has independent research disclosed, any case in which a court has set aside a default where, in making application

---

[4] As respondent points out, appellant's initial moving papers were procedurally defective, since they did not include his proposed response. On that point, the statute includes this mandate: "Application for this relief *shall* be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application *shall not* be granted . . . ." (§ 473(b), italics added.) Some courts have found substantial compliance with this requirement when the proposed pleading was filed and served before the hearing on the motion. (See *Sousa v. Capital Co.* (1963) 220 Cal.App.2d 744, 759–761 [34 Cal.Rptr. 71] [requirement satisfied by submission prior to hearing]; *County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 837–838 [51 Cal.Rptr.2d 73] [requirement satisfied by submission prior to hearing, even though six-month statutory period had already passed by then]; cf. *Puryear v. Stanley* (1985) 172 Cal.App.3d 291, 292–293 [218 Cal.Rptr. 196] [requirement not satisfied by submission prior to hearing, where six-month jurisdictional period had already passed].) But regardless of whether late submission of the proposed pleading constitutes substantial compliance with the statutory requirement, such tardiness at least suggests lack of diligence.

therefor, there has been an unexplained delay of anything approaching three months after full knowledge of the entry of the default." (*Id.* at p. 529.) Under those circumstances, the court concluded, "the trial court abused its discretion in granting . . . relief under authority of section 473 . . . ." (*Id.* at p. 524.) Key to that conclusion was the lack of evidence explaining the delay. (*Id.* at pp. 528–532.)

b. *Lack of Explanation*

 According to *Benjamin*, "the proper procedure" for motions under section 473(b) first contemplates the moving party's "presentation of some explanation, by affidavit or testimony, of any extended delay, and the court then determines whether such explanation may be deemed sufficient to justify the granting of the relief sought." (*Benjamin, supra,* 31 Cal.2d at p. 529.) While six months—the longest time allowable—represents the outside limit "of the court's jurisdiction to grant relief in any event, the 'reasonable time' test stands as an independent consideration and in any given situation, its determination, within the maximum six-month period, 'depends upon the circumstances of that particular case.' " (*Id.* at p. 530.) For that reason, "there must be some showing—some evidence—" of the relevant circumstances. (*Id.* at p. 528.) Here, appellant offered no evidence explaining the delay in seeking relief.[5] Given the absolute failure of proof on this point, there is no basis for granting relief. As settled by our high court long ago in *Benjamin*, "the circumstances occasioning the attorney's delay of more than three months before the institution of these proceedings should have been presented in support of [the] motion for relief." (*Benjamin, supra,* 31 Cal.2d at p. 532.) "To hold otherwise—that in the absence of any explanation a delay of more than three months in undertaking to open a default can be excused—would empower the trial court to dispense with the 'reasonable time' requirement of the statute." (*Ibid.*)

In sum, this record amply supports an implied finding that appellant failed to act diligently in seeking discretionary relief under section 473(b). The

[5] Apart from references to several attachments, counsel's declaration in support of the motion for relief contains only the following statements, which explain his error but not the delay: "I failed to timely prepare an opposition to [defendant] Wang's motion through my mistake, inadvertence, surprise, excusable neglect or all or any combination of these in that I had been overwhelmed with my practice which in the months preceding the hearing had been extremely demanding in terms of court appearances, deadlines, and papers due. At that time, I did not have any administrative help. I also had approximately 40 civil litigation matters (37 in this court) and had up to 45 matters pending since the MSJ was filed. My normal practice is to leave uncalendared motions in my incoming mail box. However, because I was overwhelmed and disorganized, the motion was inadvertently placed in a box[] of completed items. As a result of the disorganization, I did not calendar the hearing date or the due date of the opposition. I did not discover that a hearing for summary judgment was upcoming until I checked the court's online calendar docket on or about February 7, 2006."

court's order may be affirmed on that basis alone. Moreover, as we now explain, the order may be upheld on another ground, failure to demonstrate excusable neglect.

## 2. *Grounds for Relief*

As the moving party, appellant had the burden of establishing entitlement to relief from the judgment. (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1041 [70 Cal.Rptr.2d 671].) He was required to "establish his position by a preponderance of the evidence." (*Price v. Hibbs* (1964) 225 Cal.App.2d 209, 215 [37 Cal.Rptr. 270].) Where " 'a party fails to show that a judgment has been taken against him through his mistake, inadvertence, surprise or excusable neglect the court may not grant relief. It has no discretion.' " (*Parage v. Couedel*, at p. 1042.) In this case, the record supports an implied finding that appellant failed to carry his burden.

### a. *Excusable Neglect*

To warrant discretionary relief here, the proffered evidence must show that the attorney's error was excusable. (See *Zamora, supra*, 28 Cal.4th at p. 258; *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007 [32 Cal.Rptr.3d 202].) Neglect is excusable only if a reasonably prudent person in similar circumstances might have made the same error. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190, 721 P.2d 71]; *Garcia v. Hejmadi, supra*, 58 Cal.App.4th at p. 684; *Alderman v. Jacobs, supra*, 128 Cal.App.2d at p. 276.) Relevant factors in assessing counsel error include: "(1) the nature of the mistake or neglect; and (2) whether counsel was otherwise diligent in investigating and pursuing the claim." (*Bettencourt v. Los Rios Community College Dist.*, at p. 276.) "Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable." (*Garcia v. Hejmadi*, at p. 682; accord, *Zamora*, at p. 258.) "To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice." (*Garcia v. Hejmadi*, at p. 682.)

In this case, the only evidence offered by appellant in support of his bid for relief was the declaration of his attorney. According to that declaration, "because [counsel] was overwhelmed and disorganized," he misfiled the summary judgment motion among "completed items" and "did not calendar the hearing date or the due date of the opposition."

As respondent points out, however, "press of business" alone generally does not constitute grounds for relief. As the California Supreme Court

observed in *Elston*, the fact that counsel "was busy with other matters during the relevant period . . . standing alone would not constitute excusable neglect." (*Elston, supra*, 38 Cal.3d at p. 234; see also, e.g., *Ambrose v. Michelin North America, Inc.* (2005) 134 Cal.App.4th 1350, 1355 [37 Cal.Rptr.3d 1]; *Garcia v. Hejmadi, supra*, 58 Cal.App.4th at p. 684; see generally 8 Witkin, Cal. Procedure (4th ed. 1997), Attack on Judgment, § 167, pp. 671–673.)

To constitute grounds for relief, an exceptional workload generally must be accompanied by some factor outside the attorney's control that makes the situation unmanageable, such as a mistake "caused by a glitch in office machinery or an error by clerical staff." (*Ambrose v. Michelin North America, Inc., supra*, 134 Cal.App.4th at pp. 1354–1355; see, e.g., *Zamora, supra*, 28 Cal.4th at p. 252 [relief available for "typo" by "attorney's legal assistant"]; *Downing v. Klondike Min. etc. Co.* (1913) 165 Cal. 786, 788 [134 P. 970] [relief warranted where papers were misplaced "through the mistake of a clerk"]; *Alderman v. Jacobs, supra*, 128 Cal.App.2d at p. 276 ["clear case of inadvertence and excusable neglect" where attorney's secretary lost the answer that had been prepared for filing].) Other such factors might include extraordinary changes in the law firm. (See, e.g., *Contreras v. Blue Cross of California* (1988) 199 Cal.App.3d 945, 951 [245 Cal.Rptr. 258] [circumstances warranting relief include law firm breakup "resulting in the work of 5 attorneys being redistributed to 3"]; *Carli v. Superior Court* (1984) 152 Cal.App.3d 1095, 1097 [199 Cal.Rptr. 583] [factors justifying relief include law firm's loss of "one of [its] three attorneys" who left "a case load of some 150 cases"].)

No such clerical mistake or extraordinary circumstance appears here. No clerk or legal assistant misfiled the papers. (Cf. *Downing v. Klondike Min. etc. Co., supra*, 165 Cal. at p. 788; *Alderman v. Jacobs, supra*, 128 Cal.App.2d at p. 276.) There is no evidence that the size of counsel's firm suddenly constricted. (Cf. *Contreras v. Blue Cross of California, supra*, 199 Cal.App.3d at p. 951; *Carli v. Superior Court, supra*, 152 Cal.App.3d at p. 1099.) Counsel's declaration does not establish that he was unaware of the summary judgment motion. (Cf. *Elston, supra*, 38 Cal.3d at p. 235 [plaintiff's attorney was "unaware of [the] existence" of the misplaced papers "until the answers were overdue"].) Nor was the court required to believe that lack of administrative help caused the error. (See *Solv-All v. Superior Court, supra*, 131 Cal.App.4th at p. 1008.) Discretionary relief need not be granted for "errors by [counsel] . . . in failing to calendar and appear" at a hearing. (*Yeap, supra*, 60 Cal.App.4th at p. 603; see also *Todd v. Thrifty Corp., supra*, 34 Cal.App.4th at p. 991 [though "calendaring error" caused counsel's failure to oppose the motion, there was "no basis for concluding that [opposition] would have altered the outcome"].)

In short, the trial court could reasonably conclude that appellant failed to establish excusable neglect and thus was not entitled to discretionary relief under section 473(b). "In determining whether to grant relief under this provision, the court is vested with broad discretion . . . , and its factual findings are entitled to deference." (*Solv-All v. Superior Court, supra*, 131 Cal.App.4th at p. 1007, citations omitted.) Deferring to the court's implicit determination that appellant's evidence did not establish excusable neglect, we find no abuse of discretion.

### b. *Futility*

Respondent cites another factor supporting denial of the motion for relief—futility. As he points out, even if the trial court had set aside the March 2006 summary judgment, the April 2005 discovery order would still stand, leaving in place the deemed admissions. Setting aside the summary judgment thus would gain appellant nothing—other than the opportunity to seek reconsideration of the earlier discovery order, an opportunity that is no longer available.

Appellant disputes the notion of futility, devoting a large part of his reply brief to his prospects for obtaining reconsideration of the order for deemed admissions.

We need not address the merits of any prospective bid for reconsideration. As discussed above, the record in this case provides ample support for the implicit decision to deny discretionary relief on two other grounds: lack of diligence and failure to demonstrate excusable neglect. We may therefore affirm on those grounds, without reaching the issues concerning reconsideration.

## SUMMARY OF CONCLUSIONS

I. As a matter of law, appellant is not entitled to relief under the mandatory provision of section 473(b), because that provision applies only to defaults, default judgments, or dismissals; it does not apply to summary judgments.

II. On this record, the trial court did not abuse its discretion in denying appellant discretionary relief under section 473(b). The evidence supports implied findings that appellant failed to demonstrate diligence in seeking relief or excusable attorney neglect.

## DISPOSITION

The September 2006 order denying appellant's request to set aside the judgment is affirmed. Respondent shall have costs on appeal.[6]

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

On January 16, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 26, 2008, S160708. Kennard, J., was of the opinion that the petition should be granted.

---

[6] Respondent's request for appellate attorney fees is properly directed to the trial court. (See *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 426 [253 Cal.Rptr. 426, 764 P.2d 278].)