Filed 1/21/14  Castaneda v. Popelka Law Group CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BELLA CASTANEDA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>POPELKA LAW GROUP,<br><br>    Defendant and Respondent. | H038134<br>(Santa Clara County<br>Super. Ct. No. CV116466) |

Plaintiff Bella Castaneda appeals from the judgment entered after the trial court confirmed an arbitration award in favor of defendant Popelka Law Group (PLG) for approximately $83,000 in attorney fees.  Castaneda argues the judgment must be reversed because:  (1) she was never served with a copy of the arbitration award and thus the time to file a petition to vacate the award never began to run; (2) her filing of a notice of rejection of the arbitration award and request for trial de novo should have been deemed a petition to vacate the award; and (3) her motion to vacate the default judgment, pursuant to Code of Civil Procedure section 473, subdivision (b)[1] (hereafter section 473(b)), should have been deemed timely filed under the circumstances.

We reject her arguments and shall affirm the judgment.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Castaneda and PLG became embroiled in a dispute over $75,000 in attorney fees, and in 2007, engaged in nonbinding arbitration before the Santa Clara County Bar Association.  The arbitrator awarded PLG a total of $33,056.20 in fees.

Dissatisfied with this result, Castaneda filed a declaratory relief action seeking a judicial declaration that she owed PLG nothing.  PLG filed a cross-complaint, seeking the entire $75,000 in fees, and petitioned to compel arbitration pursuant to the attorney fees contract.  The trial court granted PLG's petition and ordered the matter to arbitration with JAMS.[2]

The JAMS arbitrator scheduled the arbitration hearing for November 19, 2010. Two days prior to that hearing, Castaneda's counsel, Rodel Rodis, notified the arbitrator he had been relieved as counsel.  Castaneda also sent a letter requesting a continuance of the arbitration hearing, but that request was denied.

Castaneda failed to appear for the arbitration hearing, but hand-delivered a letter requesting a continuance to submit 35 exhibits she believed would disprove PLG's claims.  The arbitrator gave Castaneda until December 1, 2010, to submit her evidence and continued the hearing to December 3, 2010, to allow her to present the evidence.

At the December 3 hearing, Castaneda asked for yet another continuance to present additional evidence.  The arbitrator granted her request and gave her until December 12, 2010, to do so.  He also advised the parties the matter would be submitted on that date.

In a written decision dated January 7, 2011, the arbitrator denied Castaneda's claims and awarded PLG a total of $83,660.70, consisting of unpaid attorney fees, plus

---

[2] Judicial Arbitration and Mediation Services.

interest and costs. On January 10, 2011, JAMS served the arbitration award on PLG and Philip Rosenblatt[3] by e-mail and regular mail.

On February 1, 2011, Castaneda, acting in pro per, filed a document in the trial court entitled "Plaintiff's Rejection of Arbitration Award and Request for Trial De Novo," citing section 1141.20 and former California Rules of Court, rule 1616, now rule 3.826.

On April 22, 2011, PLG petitioned for an order confirming the arbitration award. The petition was served on Castaneda by mail and she acknowledges receiving it, "among 45 pages of documents." A hearing on PLG's petition was set for May 24, 2011.

On May 19, 2011, Castaneda again retained Rodis to represent her in her dispute with PLG. Castaneda claims that neither she nor Rodis were aware that PLG's petition to confirm the arbitration award was scheduled for a hearing on May 24, 2011, until after the petition was granted, and accordingly, no opposition was filed.

On May 24, 2011, the trial court adopted its tentative ruling granting PLG's petition to confirm the arbitration award and entered judgment in PLG's favor. Notice of entry of the order confirming the arbitration award in PLG's favor was filed on June 16, 2011.

On December 2, 2011, Castaneda filed a motion to set aside the default judgment pursuant to section 473(b). In her motion, Castaneda argued that, as a pro per litigant, she did not know PLG's petition to confirm the arbitration award was a motion which required a timely opposition. Consequently, her failure to oppose the petition was due to excusable neglect, inadvertence or surprise. In her supporting declaration,[4] Castaneda

---

[3] According to Castaneda, she retained Rosenblatt on December 10, 2010, to represent her in the arbitration. When Rosenblatt learned that the arbitration had been completed, he did not undertake any action on her behalf and did not file a substitution of counsel.

[4] Rodis did not file a declaration in support of the original motion for relief, though he did submit a declaration in support of the motion for reconsideration.

claimed she did not notice the petition in the 45 pages of documents she received from PLG, and when Rodis found the document in her files, there was no hearing date or time written on it. With respect to the delay in moving for relief, Castaneda asserted that she was very "discouraged by the way the legal system had been rigged against [her] . . . [and] did not know if [she] wanted to continue fighting for justice." According to Castaneda, Rodis advised her she had six months to bring motion for relief from default and, at some undisclosed time, she decided to "fight for [her] right to have [her] day in court."

At the hearing, Rodis argued that Castaneda was never served with the arbitration award itself, as the proof of service showed it was served only on Rosenblatt, and he had never officially substituted in as her counsel. When asked why the motion was not filed until over six months after judgment was entered, Rodis claimed it was received by the clerk's office on November 23, 2011, but the clerk erroneously refused to file it.[5] He also argued that notice of entry of judgment was filed on June 10, 2011, so the motion was filed within six months of that date. The following colloquy ensued:

"THE COURT: Why did you wait that long?

"MR. RODIS: Because it was Ms.--We were checking with Mr. Rosenblatt. I have letters asking Mr. Rosenblatt what he learned during that period of time. I was asking for his papers and--

"THE COURT: And that took you six months?

"MR. RODIS: Well, there were a number of other things. Miss Castaneda's health was really bad. I mean, she wanted desperately to be here today, but her health condition is really bad, so that was a factor in why it took that long."

The trial court denied the motion, stating "I don't think the procedural requirements have been properly met to set this aside . . . . [¶] . . . [¶] . . . The bottom line

---

[5] Castaneda presented evidence supporting this contention in a subsequent motion for reconsideration.

4

is that you have a certain time period to set aside an arbitration award. That wasn't done. [¶] Then, in terms of the relief that was being sought, the Court doesn't find it was done in a timely fashion."

Castaneda moved for reconsideration, citing "new evidence" in the form of the "Rejection of Arbitration Award and Request for Trial De Novo" she filed on February 2, 2011. In light of this document, she argued PLG's petition to confirm the arbitration award should never have been granted.

At the hearing on the motion for reconsideration, Rodis conceded Castaneda received a copy of the arbitration award before she filed her February 2, 2011 rejection of that award. Rodis argued it was nonetheless unfair for PLG to insist that Castaneda follow the letter of the law by filing a petition to vacate the arbitration award instead of a rejection of that award, when the award itself was never properly served on her as required by the Code of Civil Procedure.

The court denied the motion for reconsideration and entered judgment in PLG's favor.

II. **DISCUSSION**

A. *Statutory principles*

The discretionary relief provision of section 473(b) provides, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."

5

Castaneda claims that she is entitled to relief under section 473(b) due to her inadvertence, surprise or excusable neglect. We therefore briefly relate the standards by which those concepts have been evaluated in case law.

Section 473(b) permits the court to grant relief from a party based on his or her "inadvertence," but the trial court will not grant such relief due to mere carelessness. (*Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 527.) The term "surprise" in the context of section 473(b) refers to " 'some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.' " (*Baratti v. Baratti* (1952) 109 Cal.App.2d 917, 921.) Finally, " '[s]ection 473 . . . permits relief for "excusable" neglect. The word "excusable" means just that: inexcusable neglect prevents relief.' [Citation.] [¶] The burden of establishing excusable neglect is upon the party seeking relief who must prove it by a preponderance of the evidence." (*Iott v. Franklin* (1988) 206 Cal.App.3d 521, 528, fn. omitted; see *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1423 (*Huh*).)

B.      *Standard of review*

It is well established that the trial court's ruling on a motion for relief under section 473 is reviewed for an abuse of discretion. " 'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse.' [Citation.] ' "[T]hose affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." ' " (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257-258 (*Zamora*).)

"Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is

granted. [Citations.] In such situations 'very slight evidence will be required to justify a court in setting aside the default.' [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233.) An order denying a motion for relief under section 473 is therefore " 'scrutinized more carefully than an order permitting trial on the merits.' " (*Huh*, *supra*, 158 Cal.App.4th at p. 1420.)

Regardless, " '[i]n order to qualify for [discretionary] relief under section 473, the moving party must act diligently in seeking relief and must submit affidavits or testimony demonstrating a reasonable cause for the default.' [Citation.] In other words, the court's 'discretion may be exercised only after the party seeking relief has shown that there is a proper ground for relief, and that the party has raised that ground in a procedurally proper manner, within any applicable time limits.' " (*Huh*, *supra*, 158 Cal.App.4th at p. 1419.)

C. *Castaneda failed to establish inadvertence, surprise or excusable neglect*

Castaneda's first three arguments on appeal are, as follows: (1) she was never properly served with a copy of the arbitration award and thus the time period for filing a petition to vacate that award never began to run; (2) the February 2, 2011 "Rejection of Arbitration Award and Request for Trial De Novo," was the functional equivalent of a petition to vacate the arbitration award;[6] and (3) she was never properly served with PLG's petition to confirm the arbitration award because the copy she received did not have the hearing date and time written on it. Though she does not explicitly reference

---

[6] In this section of her brief, Castaneda cites certain Business and Professions Code sections relating to arbitration of attorney fee disputes for the proposition that she did not waive her right to request a trial de novo since she never agreed in writing, after the fee dispute had arisen, to arbitrate the dispute. As PLG points out, this argument was never raised below and it is improper for Castaneda to change her theory of relief on appeal. (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844.) We therefore do not consider this argument.

7

section 473(b) anywhere in the 10 pages devoted to these arguments, we presume she has advanced them to show that her failure to oppose PLG's petition to confirm the arbitration award was the result of inadvertence, surprise or excusable neglect. The trial court rejected these arguments, and so do we.

It is undisputed that Castaneda was not served with a copy of the arbitration award, but it is also undisputed that she received a copy of that award. Rodis conceded as much at the hearing on her section 473(b) motion. To allow her to unwind the subsequent proceedings simply because of a procedural error would elevate form over substance, a result we strive to avoid. (Civ. Code, § 3528.) Despite that document being erroneously served on Rosenblatt instead of her, Castaneda acted on it within a few days of it being issued, filing her rejection and request for trial de novo.

We now turn to the argument that her rejection and request for trial de novo, procedurally improper in itself, should have been treated as a petition to vacate the arbitration award. In essence, Castaneda is urging this court, as she did the trial court, to make allowances for her as a self-represented party. We decline to do so.

"Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) Thus, a self-represented litigant is not entitled to lenient treatment. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

An attorney in Castaneda's position would be expected to file the appropriate response to a contractual arbitration award, and the same is expected of Castaneda. It was not incumbent on PLG to notify her of her error, nor was it improper of them to

8

subsequently file a petition to confirm the arbitration award after the 100 day period set forth in section 1288 expired.[7]

Finally, we dispose of Castaneda's argument that she was served with a copy of PLG's petition to confirm the arbitration award which did not include the hearing date and time. There are at least two problems with this contention.

First, her attorney admitted he was aware or at least had an inkling that a hearing was set on May 24, 2011. At the hearing on Castaneda's section 473(b) motion, Rodis said he spoke to PLG's attorney on May 23, 2011, saying, "I notice there is something going on tomorrow. What is that? He never told me. And I asked him, is there a hearing? He didn't. [*Sic*.]" It is telling, however, that Rodis did not make these assertions in a declaration made under penalty of perjury;[8] rather, he raised them only at the hearing on Castaneda's motion for relief. Even if we assume these assertions are true, a reasonable attorney would, in the face of such stonewalling by opposing counsel, undertake an independent inquiry to confirm or deny his suspicions about a pending hearing date. Presumably, a check of the trial court's Web site or a telephone call to the clerk's office would have disclosed that a hearing was set for the following morning.

Second, the only copy of PLG's petition to confirm the arbitration award that appears in the record was the one submitted by PLG in support of its opposition to Castaneda's section 473(b) motion. That document has a hearing date (May 24, 2011) and time (9:00 a.m.) hand-written on it. Although Castaneda avers in her supporting declaration that the copy she received had no such handwriting, she failed to provide that

---

[7] Ultimately, however, Castaneda's failure to file a petition to vacate is not really the issue. Even assuming this would qualify as excusable neglect on her part, her motion for relief was otherwise fatally flawed, as discussed in more detail below.

[8] Rodis' declaration in support of the motion for reconsideration of the order denying the section 473(b) motion makes no mention of this May 23, 2011 telephone conversation.

9

copy to the trial court. Without documentary support for her claim, the trial court would be entitled to reject it or at least view it skeptically.

Because Castaneda did not establish the necessary inadvertence, surprise or excusable neglect, the trial court properly denied her motion for relief.

D.      *Castaneda was not diligent and had no reasonable excuse for her delay*

"The party seeking relief under section 473 must also be diligent. [Citation.] Thus, an application for relief must be made 'within a reasonable time, in no case exceeding six months, after the judgment . . . was taken.' (§ 473, subd. (b).)" (*Zamora*, *supra*, 28 Cal.4th at p. 258.) Where there has been an extended delay in seeking relief under section 473, such as three months, the moving party must present an explanation, by affidavit or testimony, for the delay. (*Benjamin v. Dalmo Mfg. Co.*, *supra*, 31 Cal.2d at p. 529.) "[T]he court then determines whether such explanation may be deemed sufficient to justify the granting of the relief sought." (*Ibid.*) "To hold otherwise--that in the absence of any explanation a delay of more than three months in undertaking to open a default can be excused--would empower the trial court to dispense with the 'reasonable time' requirement of the statute." (*Id.* at p. 532.)

Here, Castaneda was neither diligent nor did she present a sufficient explanation for the delay in filing her motion for relief. Regardless of whether the time period is calculated from the date of entry of judgment (May 24, 2011) or the date notice of entry of judgment was served (June 16, 2011), the motion was filed *at most* two weeks before expiry of the six month period. Under those circumstances, it was incumbent on Castaneda to proffer a reasonable explanation for waiting until the eleventh hour to move for relief from default. She did not do so.

The explanation offered in her moving declaration was that she was "discouraged by the way the legal system had been rigged against [her]." Rodis explained she had six months to file a motion to set aside the judgment and, at some undisclosed time, she "decided . . . [to] fight for [her] right to have [her] day in court." At the hearing, when

10

asked to explain why it took so long to file the motion, Rodis said nothing about Castaneda's disappointment in the legal system, but instead claimed he was "checking with Mr. Rosenblatt," along with "a number of other things," including Castaneda's poor health.

None of these excuses suffice. Our research has disclosed no case law supporting the proposition that discouragement with the legal system is a valid reason to delay seeking relief. While consulting with former counsel and a client's medical problems may be valid reasons for some delay in filing a section 473(b) motion, any attempt to attribute a delay of nearly six months to those circumstances should be supported by compelling evidence. No such evidence was presented to the trial court, and thus there is no such evidence in the record on appeal.

Accordingly, we find the trial court did not abuse its discretion in finding that Castaneda was not diligent in presenting her motion for relief.

### E. *Castaneda's motion for relief was not accompanied by an opposition to PLG's petition to confirm the arbitration award*

Finally, the trial court properly denied Castaneda's motion because it was not accompanied by a proposed opposition to PLG's petition. Section 473(b) provides that the application for relief "shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, *otherwise the application shall not be granted . . . .*" (Italics added.) It is undisputed that Castaneda's section 473(b) motion was not accompanied by an opposition to PLG's petition. This deficiency, in and of itself, warranted the denial of her motion.

## III. DISPOSITION

The judgment is affirmed. PLG shall recover its costs on appeal.

11

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.