[No. B180220. Second Dist., Div. Two. Feb. 7, 2006.]

SJP LIMITED PARTNERSHIP et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Steven R. Friedman for Plaintiffs and Appellants.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Kim Rodgers Westhoff, Deputy City Attorney, for Defendants and Respondents.

OPINION

**DOI TODD, J.**—The question presented is whether an affidavit of fault signed by an attorney who represents a party in a bankruptcy proceeding but not in the civil action is competent to support a party's motion in the civil action for mandatory relief under Code of Civil Procedure[1] section 473, subdivision (b). We hold that such an affidavit is competent and reverse the judgment of dismissal as to that party. We otherwise affirm.

---

[1] Unless otherwise noted, all statutory references shall be to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants SJP Limited Partnership (SJP) and its general partner, George Justice (Justice), sued the City of Los Angeles and others,[2] alleging that they had wrongfully refused to extend building permits previously issued to appellants for the construction of a residence on SJP's property. Appellants sought a writ of mandate, as well as monetary damages and declaratory relief based on inverse condemnation. In June 2003, the trial court issued a peremptory writ of mandate, directing respondents to grant extensions of the building permits. However, the property was ultimately lost in a foreclosure proceeding.

In October 2003, appellants' attorney of record filed a motion to be relieved as counsel. On November 5, 2003, while the motion was pending, appellants' attorney notified the court that SJP had filed for bankruptcy protection. The trial court granted the motion to be relieved as counsel on November 14, 2003. In its written order, the court ordered the action stayed and set for January 21, 2004 a status conference and order to show cause (OSC) regarding SJP's need to be represented by a licensed attorney. The court also ordered appellants' relieved counsel to give notice, including notice to SJP's bankruptcy counsel.

After Justice appeared twice in propria persona and obtained continuances, the OSC was calendared for May 11, 2004. Neither appellant appeared on that day. The court dismissed the complaint as to SJP for its failure to appear by counsel. Thereafter, the city filed a motion for judgment on the pleadings, arguing that Justice lacked standing to pursue the matter because the property at issue was owned by SJP.

The day before the hearing on the motion for judgment on the pleadings, both appellants filed a substitution of attorney. The new attorney appeared the next day at the hearing and orally requested that the case be reinstated as to SJP. The court denied the request with prejudice and granted the motion for judgment on the pleadings, dismissing the complaint as to Justice.

Appellants filed a motion for relief, asking the court to vacate the dismissals under the mandatory relief provisions of section 473, subdivision (b), or alternatively, under the court's inherent discretionary authority. The declaration of SJP's bankruptcy counsel, Stuart Koenig, was offered in support of the motion. Koenig declared that he was aware SJP's counsel in the state court action had withdrawn from representation and that

---

[2] Appellants also sued the Board of Building and Safety Commissioners of the City of Los Angeles, the Department of Building and Safety of the City of Los Angeles, and the General Manager of the Department of Building and Safety.

Justice was having difficulty obtaining new counsel for SJP. Justice had informed him that the state court required SJP to appear at a hearing with new counsel. Koenig advised Justice that the state court could not dismiss SJP's case because to do so would violate the automatic stay Koenig believed was in place under section 362 of the United States Bankruptcy Code. The declaration stated: "Prior to the hearing that resulted in the dismissal of SJP as a party to this action, I did advise Mr. Justice that this Court could not and therefore would not act to dismiss SJP as a party. It is my understanding that Mr. Justice acted on this advice. I further recognize that, although I was not representing SJP in this State Court action, I should have appeared at the hearing and made certain that this Court was aware that SJP was in bankruptcy and that the automatic stay precluded this Court from taking any action against an asset of the bankruptcy estate, such as this claim. [¶] In light of the ruling by this Court that the automatic stay does not protect SJP from a dismissal as a party, my interpretation of the Bankruptcy Code and the application of the automatic stay to the facts of this case was incorrect, and therefore the dismissal of SJP was the result of my advice to Mr. Justice and mistaken interpretation of the Bankruptcy Code."

Justice submitted his own declaration in support of the motion, stating the following: "I acted in reliance upon Mr. Koenig and his firm. I truly did use all my best efforts to get another attorney for SJP and to comply with the Court's order, despite the fact that I was told by Mr. Koenig that the Court could take no action against SJP's claims." Justice explained that no attorneys he spoke to were willing to undertake representation until a lien filed by prior counsel was resolved. Justice also stated that he attempted to appear at the OSC hearing on May 11, 2004, but arrived late due to unforeseen traffic.

Respondents filed an opposition to the motion for relief, which was later stricken by the trial court for improper service. In reply, appellants submitted an additional declaration of Koenig, stating that he was not related to Justice and had no other relationship with Justice or SJP other than as counsel for SJP. Justice also submitted an additional declaration stating that prior to SJP's dismissal, he had confirmed Koenig's advice with another bankruptcy attorney, who was neither a friend nor relative.

The court denied the motion for relief, finding that the declaration of SJP's bankruptcy counsel did not qualify under section 473, subdivision (b) because he was not the attorney of record in the civil case. The court also declined to exercise its inherent discretionary authority to vacate the dismissals.

Appellants have appealed from both judgments of dismissal and the order denying the motion for relief.[3]

## DISCUSSION

*Standard of Review*

■ If the prerequisites for the application of the mandatory relief provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief. (*Leader v. Health Industries of America, Inc., supra,* 89 Cal.App.4th 603, 612.) Where, as here, the applicability of the mandatory relief provision does not turn on disputed facts and presents a pure question of law, our review is de novo. (*Ibid.*)

*An Attorney Affidavit of Fault Is Competent if Signed by an Attorney Representing the Client in Another Action*

The mandatory relief provision of section 473, subdivision (b) provides in relevant part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties."

"Prior to its amendment in 1988, subdivision (b) of section 473 provided solely for discretionary relief and did not include this provision for mandatory relief." (*Benedict v. Danner Press* (2001) 87 Cal.App.4th 923, 927 [104 Cal.Rptr.2d 896].) The purpose of the mandatory relief provision was " ' " 'to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' [Citations.]" [Citation.]' " (*Ibid.;* see *Leader v. Health Industries of America, Inc., supra,* 89 Cal.App.4th at pp. 617–618.) "Relief is mandatory when a complying affidavit is filed, even if the attorney's

---

[3] An order denying a motion to vacate a judgment or dismissal under section 473 is appealable. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 611 [107 Cal.Rptr.2d 489].)

neglect was inexcusable." (*Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033 [26 Cal.Rptr.3d 194].)

■ We look to the rules of statutory construction to determine whether the mandatory relief provision of section 473, subdivision (b) applies to the affidavit of an attorney who is not the attorney of record in the civil action. "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] 'In determining intent, we look first to the language of the statute, giving effect to its "plain meaning." ' " (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) " 'If the language is unambiguous, our task is finished. [Citations.] If the language is ambiguous, we then examine the context of the statute, striving to harmonize the provision internally and with related statutes, and we may also consult extrinsic indicia of intent as contained in the legislative history of the statute.' [Citation.]" (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 142–143 [114 Cal.Rptr.2d 93].)

We find nothing in the language of section 473, subdivision (b) to suggest that the Legislature intended the mandatory relief provision to be limited to those circumstances where the attorney affidavit of fault is signed by the defaulting or dismissed party's *attorney of record* in the civil case. While the Legislature uses the phrase "attorney of record" three times in section 473, subdivision (b), it does not do so in the mandatory relief provision. Instead, the mandatory relief provision provides that where "an attorney's" sworn affidavit attesting to his or her mistake, inadvertence, surprise or neglect accompanies a proper motion, the court shall vacate a default judgment or dismissal entered "against his or her client." (§ 473, subd. (b).) By its language, the statute only requires the affidavit be executed by an attorney who represents the client and whose mistake, inadvertence, surprise or neglect in fact caused the client's default or dismissal. The statute does not state that the affidavit must be signed by the "attorney of record" in the civil action or by an attorney who has already appeared on behalf of the client. Indeed, such an interpretation would eviscerate the very purpose of the statute for those clients whose defaults were entered because their attorneys inexcusably failed to timely file an answer or other responsive pleading on their behalf. In such cases, the default would have been taken against the client before the attorney ever appeared before the court or became "attorney of record" in the matter. (See, e.g., *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 911–912 [44 Cal.Rptr.2d 682] ["[T]he policy goal sought to be effectuated [was] to relieve *innocent* clients from losing their day in court because the attorneys they hired to defend them inexcusably fail to file responsive papers"]; *Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1820–1821 [41 Cal.Rptr.2d 182] ["a default judgment is entered when a defendant fails to appear, and, under section 473, relief is afforded where the failure to appear is the fault of counsel"].)

Therefore, to engraft onto the phrase "an attorney" the limitation that the attorney actually be the attorney of record in the civil action would violate the rule of statutory construction that we interpret a statute so as to give effect to the legislative intent. (See *Burden v. Snowden, supra,* 2 Cal.4th 556, 562.) Where, as here, the Legislature used different words or terminology in the same section of the law with regard to the same subject, we presume that it intended the words to be understood differently. (*California Highway Patrol v. Workers' Comp. Appeals Bd.* (1986) 178 Cal.App.3d 1016, 1023–1024 [224 Cal.Rptr. 94]; *Ford Motor Credit Co. v. Price* (1985) 163 Cal.App.3d 745, 749 [210 Cal.Rptr. 17].)

Appellants rely on the recent case of *Rodrigues v. Superior Court, supra,* 127 Cal.App.4th 1027, which was decided several months after the trial court's ruling here. Although not precisely on point, *Rodrigues* is instructive. There, the plaintiff obtained a default judgment against the defendants after they failed to answer the complaint. The defendants filed a motion for relief under the mandatory provision of section 473, subdivision (b), relying on the declaration of their Portuguese attorney, who explained that he had mailed to the court a response in both Portuguese and English from his office in Lisbon. (*Rodrigues v. Superior Court, supra,* at p. 1030.) The plaintiff opposed the motion, arguing that the attorney's declaration could not trigger mandatory relief because he was not licensed to practice law in California. (*Id.* at p. 1031.) The trial court disagreed and the appellate court affirmed. After finding no authority suggesting that the unadorned term "attorney" implies California licensure, the *Rodrigues* court concluded that the statute's remedial purposes would best be served by holding an affidavit of fault sufficient to entitle the client to relief if it is filed by a person licensed to practice law in any jurisdiction. (*Id.* at p. 1037.)

Respondents argue that *Rodrigues* is distinguishable because Koenig denied having an attorney-client relationship with SJP in the civil action and never tried to represent SJP in the civil action. But it is undisputed that Koenig represented SJP in the bankruptcy action. And Koenig's declaration makes clear his fault lies in not appearing at the OSC hearing in spite of his not having been retained to represent SJP in the civil action. Just as the *Rodrigues* court concluded that interpreting the term "attorney" to include non-California attorneys would better serve the statute's remedial purposes, we also conclude that interpreting the term "attorney" to include attorneys who are not of record in the civil action would better serve the statute's remedial purposes. We note that these purposes are consistent with the general preference for relief from procedural forfeitures reflected in section 473 as a whole. (*Rodrigues v. Superior Court, supra,* 127 Cal.App.4th at p. 1037.) We therefore hold that the trial court erred in finding that Koenig's declaration was incompetent as an attorney affidavit of fault under section 473, subdivision (b).

*Koenig's Mistake and Neglect Were Causes in Fact of SJP's Dismissal*

Respondents contend that even if Koenig's declaration qualifies under section 473, subdivision (b) as an attorney affidavit of fault, Koenig's admittedly wrong legal advice was not the proximate or actual cause of SJP's dismissal. According to respondents, the cause of the dismissal was SJP's own failure to comply with a court order to appear by counsel.

Koenig's declaration identifies two areas of fault on his part: (1) he misinterpreted the Bankruptcy Code and gave the incorrect legal advice to Justice that an automatic stay was in place, and (2) he neglected to appear at the OSC hearing on behalf of SJP based on his mistaken belief that the trial court could not dismiss SJP's case. Justice declared that he relied on Koenig's advice. Justice also stated that he continued to use his best efforts to obtain representation on SJP's behalf in the civil action, despite Koenig's advice that the civil court could not dismiss the complaint as to SJP, and that he did not appear at the OSC hearing because of traffic problems.

Though the trial court made no explicit findings on the causation issue, it noted: "Indeed, if somebody did have the courtesy of appearing as Mr. Justice had on two prior occasions, I indulged them to a point, I probably wouldn't have given another two months. I probably would have given one month or three weeks. That's the normal way to get somebody's attention is to make the window of time a little narrower, but nobody bothered to appear."

It is clear from the court's comments that had Koenig appeared at the OSC hearing, SJP would have been granted an extension of time to obtain representation in the civil action and its complaint would not have been dismissed at that time. As noted above, Koenig failed to appear based on his mistaken belief that the trial court could not take any adverse action against SJP's civil case. Thus, we conclude that Koenig's admitted mistaken interpretation of the Bankruptcy Code and his neglect in failing to appear at the OSC hearing were causes in fact of SJP's dismissal.

Even if we were to assume that SJP was equally responsible for the dismissal in light of its failure to obtain representation in the civil action, "[t]he statute merely requires that the attorney's conduct be a cause in fact of the entry of default (see § 473, subd. (b)), but does not indicate that it must be the *only* cause." (*Benedict v. Danner Press, supra,* 87 Cal.App.4th at p. 929; see also *Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 867 [62 Cal.Rptr.2d 98].) The *Benedict* court noted the few cases that had affirmed the denial of relief under section 473, subdivision (b) when an attorney's conduct contributed to the entry of default all involved circumstances in which the client's "*intentional* misconduct" was found to be

responsible, at least in part, for the dismissal or entry of default. (*Benedict v. Danner Press, supra,* at p. 929.) Because there was no evidence of intentional client misconduct in *Benedict,* the court concluded: "Inasmuch as respondents' counsel submitted declarations indicating ways in which counsel's mistake or neglect caused the entry of default, the trial court properly granted the requested relief, even though [the client's] mistakes were an additional cause in fact of the entry of default." (*Id.* at p. 932.)

Here, the evidence does not support the finding of any intentional misconduct on the part of SJP. Both Justice's and Koenig's declarations establish that Justice was actively trying to obtain new counsel for SJP pursuant to the court's order, but that he was having trouble doing so in light of the lien that had been filed against the proceeds of the civil action by appellants' prior counsel. Justice's declaration also establishes that he attempted to appear at the May 11, 2004 OSC hearing, just as he had appeared at the two prior hearings, but that he was stuck in traffic. Justice also confirmed Koenig's advice with another bankruptcy counsel prior to the dismissal of SJP. Because Koenig's declaration indicates that his mistake or neglect caused SJP's dismissal and because the evidence does not support a finding of intentional misconduct on SJP's part, we find that the trial court erred in not granting SJP mandatory relief from dismissal.

*There Is No Basis for Reversing Justice's Dismissal*

There is no basis for finding that Justice was entitled to mandatory relief from his own dismissal under section 473, subdivision (b). Where an attorney submits a sworn affidavit of fault, section 473, subdivision (b) provides mandatory relief from default or dismissal entered "against his or her client." Koenig never represented Justice individually. Both Koenig's and Justice's declarations make clear that Koenig represented only SJP, the sole party in bankruptcy.

Appellants have not raised any other ground on appeal for vacating Justice's dismissal. Although the motion for relief was brought under the alternative ground of the trial court's inherent discretionary authority to grant relief, the trial court declined to exercise such authority, and appellants do not challenge the denial of the motion for relief on this ground. Nor do appellants challenge on appeal the trial court's grant of respondents' motion for judgment on the pleadings, pursuant to which Justice was dismissed.

## DISPOSITION

The judgment dismissing the complaint as to SJP is reversed. The matter is remanded to the trial court with directions to vacate its order denying the motion for relief as to SJP only and to grant the motion in favor of SJP and reinstate the complaint as to SJP. The judgment of dismissal as to Justice is affirmed. The parties to bear their own costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.