Filed 12/23/14  Maize v. Cuevas CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD MAIZE, | B249597 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC493603) |
| v. | |
| JAIME CUEVAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mary Ann Murphy, Judge.  Affirmed.

Humphrey + Law, J. Scott Humphrey for Defendant and Appellant.

Hamburg, Karic, Edwards & Martin, Gregg A. Martin, David M. Almaraz for Plaintiff and Respondent.

_____

A defendant failed to answer a complaint, thinking that no default would be taken because he and plaintiff were friends and business associates.  He was mistaken.  The trial court (1) denied mandatory relief from default because defendant was not represented by counsel when the default was taken, and (2) denied discretionary relief because defendant's neglect was inexcusable and a prudent person would have answered the complaint instead of ignoring it.  (Code Civ. Proc., § 473.)  We affirm.

## FACTS

Plaintiff Richard Maize sued defendant Jaime Cuevas to collect a $50,000 loan.  Defendant was personally served with the lawsuit on October 15, 2012.  He admits receiving the summons and complaint; however, he did not take the matter seriously because plaintiff was a friend and business associate, and "I believed that Maize and I would either resolve the dispute outside of court or at least litigate as gentlemen."

Defendant's belief proved to be misplaced.  On November 20, 2012, six days after the deadline for responding to the complaint, plaintiff had a default entered.  On December 7, 2012, defendant wrote to plaintiff's attorney, expressed disappointment about the lack of courtesy, and asked that the default be set aside so that he could answer the complaint.  Plaintiff refused.

Defendant moved to set aside the default on the grounds of mistake, inadvertence or excusable neglect.  He submitted a declaration blaming his own "good faith [belief] that Maize would not seek to deny me the ability to respond to his complaint," adding, "[i]n retrospect, I was naïve to believe that Maize would not try to take advantage of me in this litigation."  Defendant was surprised that plaintiff's counsel did not contact him before taking the default.

Plaintiff countered that defendant showed a lack of diligence by waiting two months to seek relief.  There was no evidence of excusable neglect, mistake or surprise: defendant's failure to read the summons—or his hope that no default would be entered— was inexcusable.  Defendant admitted to being served with the summons and complaint, but chose to ignore the lawsuit.  Plaintiff's counsel had warned defendant of "one last opportunity to repay the loan" before plaintiff pursued legal action.

At a hearing on the motion to set aside the default, the trial court read aloud defendant's declaration and found itself "at a loss" to see a mistake of fact, a mistake of law, surprise, or excusable neglect. Defendant could have avoided the default through the exercise of ordinary care, in the court's view. Defendant's newly hired attorney suggested that another lawyer, who was not formally retained, may have given defendant confusing information that led to the entry of default. The court continued the hearing to allow defendant to file an attorney affidavit of fault.

Defendant submitted a declaration from James Grant, a lawyer who is defendant's friend. A few days after defendant was served with the summons and complaint, he ran into Grant and told him about the lawsuit. Grant did not discuss the deadline for answering the complaint, but promised to call defendant soon to give him free legal advice. He informed defendant that "I could not formally represent him in the case because he does not have any money and was, therefore, ineligible to become a formal client at my law firm." Grant became busy at work and forgot about defendant's case. When they next spoke, in December 2012, a default had been taken.

Grant helped defendant prepare a motion to set aside the default. Grant relied solely on discretionary grounds for relief in the motion, believing that "an attorney affidavit was not available because I could not formally represent Jaime." Grant opined that the default would not have been entered against defendant "if I had timely notified him of his original deadline to respond to the complaint because I would have assisted him in preparing and filing his answer and cross-complaint before the original deadline or advised him to request . . . a short extension of time to respond."

Plaintiff opposed Grant's declaration. Plaintiff argued that Grant admittedly did not represent defendant when the default was entered. Moreover, defendant's own declaration showed that his failure to answer the complaint was proximately caused by his own intentional neglect, not bad legal advice. As a result, mandatory relief could not be granted on the basis of attorney fault.

3

## THE TRIAL COURT'S RULING

The trial court observed that a default may be set aside, in the absence of attorney fault, if the defendant carries his burden of showing excusable neglect, i.e., that the default could not have been avoided through the exercise of reasonably prudent care. Defendant's acts, as described in the declaration in support of his motion "do not constitute mistake, inadvertence, surprise, or excusable neglect" because they were not those of a reasonably prudent person acting in propria persona. The summons says, on its face, that an adverse judgment can be taken "unless you respond in 30 days."

The declaration of James Grant did not help defendant. The court stated that Grant "did not represent defendant Cuevas at the time of the default," even if he periodically gave free legal advice to defendant as a friend. Consequently, "the fault of the default being entered in this action lies solely with defendant Cuevas." Defendant never claimed that he was misled by Grant; rather, he admitted that he did not timely respond because he did not think that plaintiff would take a default. Defendant never followed up with Grant after their passing conversation in October 2012.

The court denied defendant's motion on April 23, 2013. One day later, the court signed a default judgment against defendant for $75,860.96, including interest and attorney fees. Defendant appeals from the judgment.

## DISCUSSION

Though an order denying defendant's motion for relief from default is not independently appealable, "it may be reviewed on an appeal from the judgment." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.) Review "'is quite limited. A ruling on such a motion rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion'" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200) that "'exceeds the bounds of reason.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) A reviewing court cannot substitute its deductions for those of the trial court. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 597-598.)

4

Defendant tried two tacks in his effort to convince the trial court to set aside the default. First, he blamed himself for having the mistaken belief that plaintiff would not seek a default. At the initial hearing, the trial court signaled its rejection of that theory. Second, defendant's friend, a lawyer who did not represent defendant, tried to take the blame for the default. Neither tack succeeded, in the end.

### a. *Mandatory Relief*

The trial court must grant relief from default whenever an application for relief, made no more than six months after entry of judgment, "is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Code Civ. Proc., § 473, subd. (b).) The purpose of the statute is to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits. (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516; *Metropolitan Service Corp. v. Casa De Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487.)

The mandatory relief provision is intended "to relieve *innocent* clients from losing their day in court because the attorneys they hired to defend them inexcusably fail to file responsive papers." (*Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 911-912.) An attorney who represents a partnership in bankruptcy may submit an affidavit of fault after giving the partnership incorrect legal advice in civil litigation: if the client relies on it, relief must be granted. (*SJP Limited Partnership v. City of Los Angeles*, *supra*, 136 Cal.App.4th at pp. 516-520.) Notably, however, if the bankruptcy attorney does not represent one of the partners individually, that individual is not entitled to relief, even if the partnership receives mandatory relief, because he is not a "client." (*Id.* at p. 520.)

Defendant did not hire James Grant to defend against plaintiff's lawsuit. Instead, he briefly ran into Grant and told him about the lawsuit. Grant informed defendant that "I could not formally represent him in the case." No reasonable person could take that to mean that Grant agreed to file timely responsive papers, thereby removing the burden

5

from defendant of taking any action within the time frame specified in the summons. Grant did not tell defendant to ignore the lawsuit or give other bad advice.

Cuevas did not lose his day in court because he hired counsel who inexcusably failed to file an answer. No attorney-client relationship arose before default was entered. (See *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915 [trial court rejected an attorney affidavit of fault unaccompanied by documentation showing that counsel was retained before default was entered].) "Because Attorney [Grant] was not representing defendant[] at the time the default was entered, we find as a matter of law, that he was not the proximate cause of the entry of default . . . . Hence, the trial court properly concluded that defendant[] [was] not entitled to relief under the attorney affidavit provisions of section 473." (*Cisneros v. Vueve*, *supra*, 37 Cal.App.4th at p. 912.)

Even if Grant was peripherally involved, defendant was solely responsible for the default because he never followed up by giving Grant the summons and complaint, or by finding out when the answer was due, or by asking what the next step should be. The court properly denied relief because the default was not caused by an attorney. (Code Civ. Proc., § 473, subd. (b) [court may deny relief if it finds that the default was not caused by attorney mistake, inadvertence, surprise or neglect].)

b. *Discretionary Relief*

The trial court "may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect," if relief is requested "within a reasonable time" not to exceed six months. (Code Civ. Proc., § 473, subd. (b).) Public policy favors granting relief and allowing a party his day in court. (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at pp. 981-982.) The party seeking relief bears the burden of proof. (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1205.)

Self-representation is not a ground for lenient treatment. "[T]he rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at pp. 984-985.) Courts do not take the view that pro. per. defendants' "improvident initial self-

6

representation particularly entitles them to the balm of relief from default.  Procedural law cannot cast a sympathetic eye on the unprepared, or it will soon fragment into a kaleidoscope of shifting rules." (*Id.* at p. 979.)

Defendant admits that he was personally served with the summons and complaint. The summons informed him that he had 30 days to respond, or risk an adverse judgment. There was no improper service; no mistake of law; and no extrinsic mistake.  Defendant was not misled by plaintiff's counsel or the court clerk.  (See *Rappleyea v. Campbell*, *supra*, 8 Cal.4th at pp. 978-979, 984-985.)  Instead, defendant attributed his failure to answer to his belief that plaintiff would not take a default.  He declares that "in retrospect, I was naïve."

Naivete alone does not compel a legal remedy for failure to answer a complaint, absent affirmative misrepresentations by the opposing party or a court employee. (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 979.)  """It is the duty of every party desiring to resist an action . . . to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment.""" (*Price v. Hibbs* (1964) 225 Cal.App.2d 209, 215.)  Cuevas inexcusably neglected his legal duties.  A party cannot have a judgment set aside because he was "'mistaken as to the legal [consequences] of his actions'" and "[i]n retrospect, realizes that he made a mistake in assuming that he could competently represent himself." (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1264-1265.)  Defendant's mistake was one of poor judgment, general ignorance of the law or unjustifiable negligence in discovering the law, none of which are grounds for relief.  (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1206.)

Although defendant professed surprise that plaintiff's counsel did not give him a courtesy call, this is not the type of surprise that excuses his failure to answer.  The term "surprise" means a situation that a party """"is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against."""" (*Hearn v. Howard, supra,* 177 Cal.App.4th at p. 1206.)  The term "inadvertence" used in the statute similarly employs the "'reasonably prudent person'" standard.  (*Ibid.*)

7

Ignoring the summons and complaint is not reasonably prudent. Ordinary prudence demands a timely answer. While criticizing plaintiff's counsel for taking a default without a courtesy call, defendant himself did not call counsel to seek an extension of time to answer or to initiate negotiations for an out-of-court resolution. Intentional disregard of service does not require a court to set aside a default. (*Price v. Hibbs*, *supra*, 225 Cal.App.2d at p. 217.) Under the circumstances, "[t]he trial court could reasonably conclude that the default judgment was not the result of any mistake, inadvertence, surprise or excusable neglect on the part of defendant, but rather, was the consequence of defendant's failure to take reasonably prudent steps to avoid entry of judgment." (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at pp. 1206-1207.)

## **DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

8