Filed 2/3/26  Pena v. Inter Stone Tools CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HECTOR JAVIER PENA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>INTER STONE TOOLS, INC., et al.,<br><br>Defendants and Respondents. | B333308<br><br>(Los Angeles County<br>Super. Ct. No. BC659877) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Frederick C. Shaller, Judge.  Affirmed.

Law Offices of Tabone and Derek L. Tabone for Plaintiff and Appellant.

Law Offices of Wendy L. Slavkin and Wendy L. Slavkin for Defendants and Respondents Marina Interlandi and Luigi Interlandi.

_____

## INTRODUCTION

Plaintiff Hector Javier Pena was injured while working for Inter Stone Tools, Inc. (Inter Stone), a company that did not carry workers' compensation insurance for its employees. Pena filed a civil lawsuit for negligence against Inter Stone and its alleged owners, Luigi and Marina Interlandi,[1] but ultimately pursued the action solely against the Interlandis. During the litigation, Pena obtained a default judgment against the Interlandis after they failed to file a responsive pleading; however, the trial court later granted the Interlandis' motion to set aside the default under Code of Civil Procedure section 473, subdivision (b). Following a bench trial on Pena's negligence claim, the trial court found in favor of the Interlandis on the grounds that Pena failed to prove that either Luigi or Marina were liable for the negligence of Inter Stone under an alter ego or joint employer theory.

On appeal, Pena argues that reversal is required because the trial court erred (1) in failing to find that the Interlandis were liable under Labor Code section 3700.5 for not carrying workers' compensation insurance; (2) in finding that the Interlandis were not liable for negligence as the alter ego of Inter Stone; and (3) in granting the Interlandis' motion to set aside the default. We conclude Pena forfeited his claim regarding the Interlandis' liability for an alleged violation of Labor Code section 3700.5 by failing to timely raise this theory in the trial court. We further conclude the trial court did not err in finding that Pena failed to meet his burden of proving that the Interlandis were liable for

---

[1] Because Luigi and Marina Interlandi share the same last name, we refer to each of them by their first names for clarity and convenience.

the negligence of Inter Stone under the alter ego doctrine. We also conclude the trial court did not err in finding that the Interlandis were entitled to mandatory relief from default based on the error of their attorney. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Pena's complaint for negligence

On May 2, 2017, Pena filed a civil complaint for negligence against Inter Stone and Luigi. Pena later amended the complaint to add Marina as a named defendant. As alleged in the complaint, Pena was employed by the defendants and worked with acetone in the course of his employment. While Pena was at work, the acetone ignited and started a fire, causing Pena to suffer burn injuries.

### 2. The Interlandis' motions for relief from default

On January 10, 2019, the trial court granted Pena's application for service of the summons and complaint by publication. Pena then obtained the Interlandis' default and dismissed Inter Stone as a defendant in the action without prejudice. On January 6, 2020, the trial court entered a default judgment against the Interlandis. However, on March 3, 2021, the court granted the Interlandis' motion to set aside the default and default judgment because the Interlandis were not properly served with the summons and complaint.

On April 25, 2021, Pena re-served the summons and complaint on the Interlandis by substitute service. The Interlandis then filed a motion to quash service of summons, which the trial court denied. On October 6, 2021, after the Interlandis failed to file a responsive pleading, Pena again obtained their default.

3

On June 7, 2022, the Interlandis moved to set aside the default and any default judgment entered against them under Code of Civil Procedure section 473, subdivision (b).  The Interlandis supported the motion with an attorney affidavit of fault in which their counsel asserted that the failure to file a responsive pleading was due to his error in calendaring the matter.  On July 5, 2022, while that motion was pending, the trial court again entered a default judgment against the Interlandis for $1,161,549.73.  However, on August 25, 2022, the court granted the motion to set aside the default and default judgment based on a finding that the Interlandis' failure to timely file a responsive pleading was due to the mistake, inadvertence, or neglect of their counsel.

### 3.    Trial on Pena's action against the Interlandis

On June 30, 2023, the trial court held a one-day bench trial on Pena's negligence action against the Interlandis.  The court admitted various exhibits by stipulation of the parties and heard testimony from Marina, Luigi, and Pena.  As set forth in the settled statement later issued by the trial court, the witnesses testified as follows:

"[Marina] took the stand and . . . was questioned by the Plaintiff's attorney about her understanding, knowledge and involvement with a business called Inter Stone Tools, Inc.  Inter Stone Tools, Inc. was a California corporation with Marina being the sole owner and listed as the only share holder.  [Marina] was shown documents (while under oath) including California Articles of Incorporation and Statements of Information that had been filed with the Secretary of State.  Marina confirmed that the signature on those documents appeared to be hers but insisted that she did not know anything about the business and that she

4

just signed paperwork that her husband gave her. Multiple times she indicated that it was his business and that those questions should be asked of him. [Marina] testified she believed that by signing the incorporation documents she was establishing a close corporation by which her husband would operate a new business of the same type he previously worked in with his parents who had retired.

"Marina testified that she had no information as to the value of the business, how much money the business made, the value of the products inside the store, who had authorization other than her husband to write checks out of the business, how much money was invested in the business to start it, or if the business ever made a profit at all. [¶] Marina also testified that she sold the business to Kevin Moda before Hector Pena was injured. She confirmed that she did not run the business, never held any meetings, and did not follow any corporate formalities. [¶] Marina further testified that she had no knowledge of any insurance or workers compensation policy that was held by Inter Stone Tools, Inc. that was active at the time of Mr. Pena's injury or if Inter Stone Tools, Inc. ever carried any such policy. She did confirm that she currently owns a separate business, a sole proprietorship, called First Class Tailors, which has no other employees and performs styling and closet cleaning services.

"When asked about her answers to interrogatories [Marina] claimed to have never seen them before and that if she had signed them it would have been at the request of her husband or attorney. During the questioning multiple inconsistences between her interrogatories and testimony were disclosed.

"[Luigi] took the stand and was questioned by Plaintiff's counsel. Luigi confirmed that he ran the business and was paid

5

by check on the checking account of Inter Stone Tools, Inc. He also testified the monthly paycheck was the only money he ever received from the business. He was aware that the business was not doing well because he did not have extra money to take his wife out to dinner. [Luigi] could not state the value of the business, the investment in the business, the amount of assets the business had at the time of the accident, the value of the inventory, or the amount [that] Inter Stone Tools, Inc. had in the bank. [Luigi] testified that [Marina] had to sign the lease for the business location and be made the holder of the lease because [Luigi's] credit was not as good as his wife's. When [Marina] signed the lease, it was signed by her as an officer of and on behalf of Inter Stone Tools, Inc.

"[Luigi] confirmed that he had been in this business of selling tools and products related to the stone cutting and finishing business for some time and his parents were in the same line of work. One of the products sold by the business was acetone which is used in stone finishing. [Luigi] testified that he did not recall whether or not, at the time of the injury to Mr. Pena, he had any safety manuals or documents regarding the correct handling of the chemical (acetone) being handled by Mr. Pena at the time of the accident. [Luigi] testified that at the business premises there was specific safety equipment and a ventilation system. [Luigi] testified that there was a fire suppression system in the building and he believes that it engaged when the fire involving Mr. Pena started. [Luigi] also testified that there was a ventilation system to vent chemicals such as acetone. [Luigi] testified that he trained Mr. Pena in specialized procedures for handling chemicals including the acetone and gave him instructions about how to safely pour from

6

a larger container into smaller container, which was the procedure being done at the time of the fire.

"Luigi was also asked about his responses to form interrogatories where multiple inconsistences were found. When asked about certain interrogatory answers he hypothesized that some blanks he left in answers must have been filled by someone at his counsel's office after he turned in the answers and verification since he did not provide the specific answer referred to in the testimony. However, Luigi was able to confirm that his wife did not have anything to do with the business and that he had complete control over all aspects of the business including financial management and direction.

"Hector Pena was the last individual to testify. Mr. Pena testified that he worked for Inter Stone Tools, Inc[.] and that he was paid by check issued on an account in the name of Inter Stone Tools, Inc. Mr. Pena also testified that he had never met [Marina] and that he believed [Luigi] owned and ran the business. He also testified [he] had never seen Mr. Moda nor was informed that the business was for sale or had been sold.

"Hector Pena testified that he received no training for hazardous materials and that he was significantly burned after returning from a smoking break and while working with acetone. Mr. Pena authenticated certain photographs depicting his burns and that he had incurred significant medical bills."

4. **Judgment in favor of the Interlandis**

On August 22, 2023, the trial court entered judgment in favor of the Interlandis and against Pena. In its statement of decision, the court found that Pena was injured within the course and scope of his employment with Inter Stone, that Inter Stone did not carry workers' compensation insurance at the time of the

incident, and that the presumed negligence of Inter Stone caused Pena's injury within the meaning of Labor Code section 3708. However, the court also found that neither Marina nor Luigi were liable to Pena for the negligence of Inter Stone under a joint employer or alter ego theory.

As to the joint employer theory of liability, the court found that Pena was solely employed by Inter Stone, and that there was no evidence that Pena had any other employer, including either Marina or Luigi as individuals. As to the alter ego theory, the court found that there was no evidence that the Interlandis took any money from the company apart from the paychecks that were issued to Luigi from Inter Stone's corporate account for his work in managing the business. The court also found that there was no evidence that the Interlandis commingled any personal and corporate funds, that Luigi was overcompensated or received benefits from the company other than a salary, that the business was undercapitalized rather than not profitable, or that the Interlandis used the corporate form to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

Following the entry of judgment, Pena filed a notice of appeal.

## 5. Settled statement

Because the trial proceedings were not transcribed, Pena submitted a proposed settled statement to the trial court after the filing of his appeal. The court found that Pena's settled statement was factually inaccurate and failed to state the issues being raised on appeal. The court ordered Pena to submit a corrected settled statement.

8

Pena then submitted a second proposed settled statement. The court found that this second settled statement failed to correct the factual errors previously identified by the court. The court also found that, while this second settled statement added a list of issues being raised on appeal, that list included an issue never pleaded or tried before the court, which was whether the Labor Code allowed for the imposition of civil liability on the owners, directors, or officers of a business for failing to carry workers' compensation insurance.

The court made corrections to the second settled statement proposed by Pena, and issued a modified settled statement that it certified as accurate.

## DISCUSSION

### 1.    Liability under Labor Code section 3700.5

On appeal, Pena argues the trial court erred in failing to find the Interlandis directly liable for his injuries based on their violation of Labor Code section 3700.5.  That statute makes the failure to secure workers' compensation insurance "by one who knew . . . or . . . should be reasonably expected to have known" of such obligation a misdemeanor punishable by imprisonment in the county jail, a fine, or both.  (*Id*., subd. (a).)  However, as the Interlandis correctly assert, Pena forfeited his claim regarding liability for an alleged violation of Labor Code section 3700.5 by failing to timely raise this theory in the trial court.

" 'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal.  A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334,

9

1350, fn. 12; see also *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 443 ["appellant 'cannot challenge a judgment on the basis of a new cause of action [he] did not advance below' "].)

In this case, Pena's complaint alleged a single cause of action for negligence. At trial, Pena's theory of liability as to the Interlandis was that Marina and Luigi were liable for the negligence of Inter Stone as either a joint employer or alter ego of the company. Pena never alleged a statutory cause of action for violation of Labor Code section 3700.5, nor did he pursue that theory at trial. Rather, the record reflects that the first time Pena mentioned Labor Code section 3700.5 was after the trial ended in his written objections to the court's tentative statement of decision. Even then, however, Pena solely referenced that statutory provision in the context of arguing that the Interlandis were liable for the negligence of Inter Stone under a joint employer or alter ego theory. It appears that Pena first raised the issue of direct liability for a violation of the Labor Code in his second proposed settled statement where he claimed that one issue on appeal was whether the Labor Code "imposes both civil and criminal liability upon the officers, directors and owners of the business" for failing to carry workers' compensation insurance, and if so, whether "the Director of Workers Compensation has more authority to recover from [these individuals] than an injured employee would have." However, as the trial court noted in rejecting this proposed settled statement, "there was no issue regarding penalties to Defendants for failing to carry workers' compensation insurance raised by the pleadings or at trial."

In his reply brief, Pena acknowledges the general rule that a party cannot raise a new theory for the first time on appeal.

10

Pena nevertheless claims that he may raise the issue of direct liability for a violation of Labor Code section 3700.5 in his appeal because it involves the application of law to undisputed facts. An appellate court does have discretion to consider a new theory on appeal when it presents a pure question of law on undisputed facts. (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335.) However, " 'if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial the opposing party should not be required to defend against it on appeal.' " (*Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 725.)

Here, Pena contends the Interlandis violated Labor Code section 3700.5 because they either knew or should have known that the law required Inter Stone to carry workers' compensation insurance for its employees, and they chose not to purchase such coverage. Yet it appears the extent of the Interlandis' knowledge of an employer's obligations under workers' compensation law was never put in issue at the trial on Pena's negligence claim. According to the trial court's settled statement, Luigi had sole responsibility for running the business of Inter Stone, but there is no indication that he was asked any questions at trial about workers' compensation insurance or why the company did not have coverage at the time of Pena's injury. Because the record does not demonstrate that this new theory of liability presents a pure question of law on undisputed facts, Pena is precluded from raising it on appeal.

**2.    Liability under an alter ego theory**

On appeal, Pena also asserts the judgment against him must be reversed because the trial court erred in finding that the

11

Interlandis were not liable for the negligence of Inter Stone under the alter ego doctrine.  We conclude Pena has failed to show error in the trial court's alter ego ruling.

### 2.1    Governing law

" ' "Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors.  Under the alter ego doctrine, however, where a corporation is used by an individual or individuals . . . to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation." ' "  (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106–1107.)  " ' "In California, two conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." ' "  (*Hacker v. Fabe* (2023) 92 Cal.App.5th 1267, 1276.)  "The plaintiff has the burden of establishing both requirements."  (*Angel Lynn Realty, Inc. v. George* (2025) 114 Cal.App.5th 655, 667.)

"Among the many factors relevant in applying the alter ego doctrine are 'one individual's ownership of all stock in a corporation; use of the same office or business location; commingling of funds and other assets of the individual and the corporation; an individual holding out that he is personally liable for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records;

12

disregard of corporate formalities; absence of corporate assets and inadequate capitalization; and the use of a corporation as a mere shell, instrumentality or conduit for the business of an individual.' [Citation.] Other recognized factors include ' "the use of the corporate entity to procure labor, services or merchandise for another person or entity" ' and ' "the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors." ' " (*JPV I L.P. v. Koetting* (2023) 88 Cal.App.5th 172, 194–195.) " 'Because it is founded on equitable principles, application of the alter ego [doctrine] "is not made to depend upon prior decisions involving factual situations which appear to be similar." ' " (*Id.* at p. 195.) Rather, " '[t]he conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court.' " (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071–1072.)

Generally, " '[i]n reviewing a judgment based upon a statement of decision following a bench trial,' we 'apply a substantial evidence standard of review to the trial court's findings of fact.' " (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 596.) However, " 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; see also *In re R.V.* (2015) 61 Cal.4th

13

181, 218; *Hacker v. Fabe, supra,* 92 Cal.App.5th at p. 1279.) The determination of whether the trial court applied the correct legal standard is a question of law subject to de novo review. (*Castaneda v. Superior Court* (2015) 237 Cal.App.4th 1434, 1443.)

## 2.2 The trial court did not err in finding that Pena failed to prove the Interlandis were liable for negligence under an alter ego theory

In this case, the trial court found that Pena failed to meet his burden of proving that either Marina or Luigi was liable for the negligence of Inter Stone under the alter ego doctrine. On appeal, Pena claims the trial court applied the wrong legal standard in making this finding by requiring him to prove the Interlandis were the alter ego of Inter Stone "for all purposes." The record, however, does not support this claim.

In its statement of decision, the trial court set forth the correct legal criteria for determining the applicability of the alter ego doctrine. The court accurately described the unity of interest and equitable interest requirements, and identified many of the factors that may be considered by the trier of fact in making its determination. The court also noted that "[n]o one characteristic governs," and it "must look at all the circumstances to determine whether the doctrine should be applied." The court then applied the relevant factors to determine whether alter ego liability should be imposed on either Marina or Luigi for Inter Stone's negligence in causing Pena's injury.

Among other factors, the trial court considered whether the Interlandis commingled corporate and personal funds or used any corporate assets for personal purposes, whether corporate funds were distributed to the Interlandis other than to pay a salary to Luigi for his services in managing the business, whether Luigi

14

was overcompensated for his services or treated the assets of the business as his own, whether the business was undercapitalized, and whether the Interlandis failed to maintain corporate records or to comply with corporate formalities. After weighing the evidence, the court determined that it "cannot find there was such a unity of interest and ownership between the corporation and its shareholder or equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist." Contrary to Pena's claim, the court did not find that he failed to prove the Interlandis should be treated as the alter ego of Inter Stone for all purposes. Rather, the court found that Pena had "not met his burden of proof to a preponderance standard that either defendant should bear alter ego liability for the . . . presumed negligence of Inter Stone Tools, Inc. for Mr. Pena's injury." The trial court thus applied the correct legal standard in determining whether the Interlandis were liable for negligence under an alter ego theory.

We also reject Pena's claim that he met his burden of proof at trial by merely showing that the Interlandis "were in control of the corporation and the corporation form was used to work an injustice to [him]." The fact that the Interlandis had sole control over the business of Inter Stone was a relevant factor to consider, but it did not, standing alone, satisfy the unity of interest requirement for alter ego liability. (See *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 812 [" '[n]o single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine' "]; *Meadows v. Emett & Chandler* (1950) 99 Cal.App.2d 496, 499 ["[m]ere ownership of all the stock and control and management

15

of a corporation by one or two individuals is not of itself sufficient to cause the courts to disregard the corporate entity"].)

Moreover, in considering the equitable interest requirement, the trial court found "no evidence that the Interlandis used or attempted to use the corporate form of the business to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." In particular, the court found "no evidence that Inter Stone['s] failure to pay for workers compensation insurance was part [of] some scheme [or] plan, [or] was deliberate or intentional." It was the exclusive province of the trial court to evaluate the credibility of witnesses and resolve conflicts in the evidence, and it is not the role of this court to substitute its view of the evidence for that of the trial court. On this record, the evidence did not compel a finding in Pena's favor on the issue of alter ego liability as a matter of law.

## 3. Relief from default

Pena next contends the trial court erred in granting the Interlandis' motion for relief from default under Code of Civil Procedure section 473, subdivision (b). He claims the Interlandis were not entitled to mandatory relief under the statute based on attorney error because they were not represented by an attorney at the time of their default, but rather were representing themselves. We conclude this claim lacks merit.

### 3.1 Governing law

Code of Civil Procedure "section 473, subdivision (b) 'contains two distinct provisions for relief from default' [citation]—one makes relief discretionary with the court; the other makes it mandatory." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.) The mandatory

16

relief provision of the statute "requires the court to vacate a default and any resulting default judgment, if a motion or application for relief from the default judgment (1) is filed 'no more than six months after entry of judgment,' (2) is 'in proper form,' and (3) is accompanied by an attorney's affidavit of fault, unless the court finds that the default judgment or dismissal was not caused by the attorney's mistake, inadvertence, surprise, or neglect." (*Jimenez v. Chavez* (2023) 97 Cal.App.5th 50, 57.)

" 'Unlike the discretionary ground for relief, a motion based on attorney fault need not show diligence in seeking relief. The motion is timely if filed within six months of the entry of the default judgment or dismissal.' " (*Dollase v. Wanu Water, Inc.* (2023) 93 Cal.App.5th 1315, 1323.) Additionally, "a party is entitled to mandatory relief under [Code of Civil Procedure section 473, subdivision (b)] even when the attorney error is inexcusable, so long as the attorney affidavit of fault shows the error was the fault of the attorney rather than the client." (*Jimenez v. Chavez, supra*, 97 Cal.App.5th at pp. 57–58.) Whether the requirements of the statute "have been satisfied in any given case is a question we review for substantial evidence where the evidence is disputed . . . ." (*Martin Potts & Associates, Inc. v. Corsair, LLC, supra*, 244 Cal.App.4th at p. 437.)

### 3.2 The trial court did not err in granting the Interelandis' motion for relief from default

In support of their June 7, 2022 motion to set aside the default and any default judgment entered against them, the Interlandis provided an affidavit of fault from attorney Thomas Sands. In that affidavit, Sands stated that he was retained by the Interlandis in or about July 2021, and that his office had been working remotely since March 2020 due to the COVID-19

17

pandemic. Sands also stated that his office underwent a reduction in staff as a result of the pandemic, and that he was suspended from the practice of law for a 90-day period starting in October 2021. Sands asserted that he was never served with Pena's requests for entry of default and a default judgment, and that he only recently learned of the case status by reviewing the docket. Sands admitted that he made errors regarding the calendaring of the matter, and that he should have instructed his staff to calendar the due date for a responsive pleading.

In granting the motion, the trial court concluded that the Interlandis were entitled to mandatory relief under Code of Civil Procedure section 473, subdivision (b), because Sands's affidavit "establishes mistake, inadvertence or neglect in connection [with] failing to file a responsive pleading for the Interlandis prior to the entry of default against them." In reaching this conclusion, the court noted that Sands appeared on behalf of the Interlandis in prior proceedings in this matter, including their motion to quash service of the summons and complaint. The court also noted that Pena served his request for entry of default and request for a default judgment on the Interlandis rather than Sands, which corroborated Sands's assertion that he did not receive notice of these filings. The court found that, based on his admission of fault in his affidavit, Sands's error was the proximate cause of the defaults entered against the Interlandis.

On appeal, Pena argues the Interlandis could not rely on Sands's affidavit in seeking relief from default because Sands was not their attorney of record at the time that Pena filed his request for entry of default and request for a default judgment. Specifically, Pena contends that when Sands previously appeared in the action on the Interlandis' behalf, the papers that he filed

with the trial court stated that he was "specially appearing" for the Interlandis. Pena claims that, because Sands had not yet made a general appearance in the case, the Interlandis "themselves were the attorneys of record" at the time of their default, and thus, any fault in failing to file a responsive pleading was that of the Interlandis alone. This claim fails.

The record reflects that, in his initial filings for this case, Sands stated that he was the "Attorney for Specially Appearing Deft. Marina and Luigi Interlandi." Given that the Interlandis were objecting to the court's jurisdiction on the grounds of improper service of summons, it made sense that they "specially" appeared in these prior court proceedings instead of making a general appearance. (See *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8 [defendants "can preserve objections to personal jurisdiction only by making a *special* appearance, i.e., an appearance for the *sole* purpose of objecting to the court's jurisdiction"].) But the fact that the Interlandis had only made a special appearance at the time of their default does not show that they were representing themselves. Instead, Sands's prior filings on behalf of the Interlandis support the trial court's finding that, when their default was entered in October 2021, the Interlandis were represented by Sands.

Yet even assuming that Sands was not the Interlandis' attorney of record at the time of their default, they were not precluded from seeking relief from default based on Sands's error in failing to file a responsive pleading. As the court explained in *SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, there is "nothing in the language of [Code of Civil Procedure] section 473, subdivision (b) to suggest that the Legislature intended the mandatory relief provision to be limited

19

to those circumstances where the attorney affidavit of fault is signed by the defaulting or dismissed party's *attorney of record* in the civil case." (*Id.* at p. 517.) Rather, "[b]y its language, the statute only requires the affidavit be executed by an attorney who represents the client and whose mistake, inadvertence, surprise or neglect in fact caused the client's default or dismissal." (*Ibid.*; see also *Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1147 [attorney providing the affidavit of fault need not be the moving party's attorney of record to support the granting of mandatory relief from a default or dismissal].)

Here, the trial court found that Sands was representing the Interlandis at the time their default was entered, and that Sands's mistake, inadvertence, or neglect in fact caused the Interlandis' default. While Pena suggests that Sands signed a false affidavit at the behest of the Interlandis, the trial court found the affidavit and Sands's admission of fault to be credible. A trial court's "determination of whether the default was caused by the attorney's mistake, inadvertence, surprise, or neglect is in part a credibility determination," and in reviewing that decision on appeal, " 'we do not reweigh evidence or reassess the credibility of witnesses.' " (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.) Based on the record before it, the trial court's finding that the Interlandis were entitled to mandatory relief from default was supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.  Respondents Marina and Luigi Interlandi shall recover their costs on appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.